UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENNIS VESEY,

Plaintiff

v.

BETH TROWBRIDGE,

Defendant.
_______________________________/

Case No. 3:21-cv-10116
District Judge Robert H. Cleland
Magistrate Judge Anthony P. Patti

**REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON THE BASIS OF EXHAUSTION (ECF No. 17)**

**I. RECOMMENDATION:** The Court should **DENY** Defendant Trowbridge's February 16, 2022 motion for summary judgment (ECF No. 17), because the Court cannot find, as a matter of law, that Plaintiff failed to allege retaliation in his misconduct proceeding.

## II. REPORT:

### A. Background

Dennis Vesey (#298066) is currently incarcerated at the Michigan Department of Corrections (MDOC) Gus Harrison Correctional Facility (ARF). On January 8, 2021, while located at ARF, Plaintiff filed the instant, verified matter *in pro per* against a single Defendant, Beth Trowbridge, who Plaintiff identifies as an ARF Librarian. (ECF No. 1, ¶ 3.) In sum, Plaintiff claims that Trowbridge's

September 28, 2019 actions, which included the issuance of a misconduct ticket, were in retaliation for "petitioning a government for redress of grievances" and, therefore, "violated the First Amendment." (ECF No. 1, ¶¶ 15-30, 40.) Plaintiff seeks declaratory, compensatory, and punitive damages, as well as an award of costs, and is proceeding *in forma pauperis*. (ECF No. 1, PageID.7; ECF Nos. 2, 4.)

**B. Defendant's Motion for Summary Judgment**

Judge Cleland has referred this case to me for pretrial matters. Currently before the Court is Defendant Trowbridge's February 16, 2022 motion for summary judgment on the basis of exhaustion (ECF No. 17), regarding which Plaintiff has filed a timely response (ECF Nos. 18, 20).

**1. Factual background**

Plaintiff alleges that on September 28, 2019, while incarcerated and serving as a law library clerk at ARF, he had a disagreement with his supervisor, Defendant Beth Trowbridge, over his job responsibilities in the presence of another law library clerk. (ECF No. 1, ¶¶ 5-14.) In the course of this discussion, Defendant, who is a white female, called Plaintiff "incompetent" and stated, "'[Y]ou people just don't get it.'" (*Id.*, ¶ 15.) Plaintiff, who is a Black male, responded by asking, "'[B]y you people, do you mean black people'?" (*Id.*, ¶ 16.) Trowbridge replied, "'[Y]ou said it[;] I didn't.'" (*Id.*, ¶ 17.) Plaintiff then left Trowbridge's office, but was called back. (*Id.*, ¶ ¶18-19.) Upon entering her office, "he attempted to resolve what he

perceived to be a grievable issue by informing Trowbridge that he no longer felt comfortable working for her after she had made what he perceived to be a racial and/or demeaning comment towards him." (*Id*., ¶ 20.) He asked to be reclassified to another job assignment, but she refused. (*Id*., ¶¶ 21-22.) "Plaintiff then informed Ms. Trowbridge that if they could not resolve the issue that he would be forced to file a grievance." (*Id*., ¶ 23.) She yelled at him and told him to leave the library immediately. (*Id*., ¶ 24.) Plaintiff gathered his belongings and complied. (*Id*., ¶ 25.) According to Plaintiff, after he left the library, "Defendant Trowbridge immediately wrote a false ticket against Plaintiff, accusing" him of refusing to perform job duties and refusing to return to her office after having walked out, after having been ordered to do both. (*Id*., ¶ 26.) At 3:30 p.m. that afternoon, Trowbridge issued Plaintiff a Class II misconduct report for "Disobeying a Direct Order[.]" (ECF No. 17-4, PageID.101.) Plaintiff accuses Defendant of fabricating the accusations in the ticket in retaliation for having exercised his First Amendment right to redress in the form of a grievance. (ECF No. 1, ¶ 27.) During the ensuing grievance process, as explained in greater detail below, Plaintiff pointed out to prison officials that "[t]he grievance policy indicates that the grievance process begins when [the] grievant attempts to resolve the grievable issue with staff." (ECF No. 17-3, PageID.97 (citing MDOC PD 03.02.130).) More precisely, however, as a prerequisite to filing a Step 1 grievance, the policy actually states: "Prior to

submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue[.]" (*See* ECF No. 17-2, PageID.81 (MDOC PD 03.02.130, effective March 18, 2019, ¶ Q).)

**2. Legal standard**

As this Court has noted, motions based on Section 1997e(a) are well-suited to analysis under Fed. R. Civ. P. 56. *See Anderson v. Jutzy*, 175 F. Supp. 3d 781, 787 (E.D. Mich. 2016) (Lawson, J.) ("The summary judgment motion is especially well suited to pretrial adjudication of an exhaustion defense, because proof of lack of exhaustion generally requires resort to matters outside the pleadings, such as affidavits or documentary evidence.") (citing *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010)).

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf*. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994). In other words, summary judgment is appropriate when "a motion for summary judgment is

properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

## C. Discussion

### 1. The misconduct hearing

Hearing officer Lt. J. Dahms conducted a misconduct hearing on October 2, 2019. The hearing report only reflects that Vesey "stated that he did not know what specific 'duty' Trowbridge was speaking about." (ECF No. 17-4, PageID.102.) However, Plaintiff's motion response provides a different, somewhat fuller narrative, declaring that he attempted to read a statement in his defense that pointed to First Amendment retaliation as the true motive for the ticket being issued, although Lt. Dahms refused to consider it. (ECF No. 20, PageID.133 ¶¶ 5-13.) In the end, Lt. Dahms found that "Vesey was given an order to complete the tasks related to his detail[,]" and "[t]his order was fair and direct." (*Id.*) Plaintiff was found guilty of the charge and sanctioned to three days loss of privileges (October 5th to 8th). (*Id.*) According to Plaintiff, "he was not allowed to present a defense," and "his request[s] to have the camera reviewed and witnesses interviewed were denied." (ECF No. 1, ¶ 30.) He also alleges that he was fired from his job and has since remained unemployed." (*Id.*, ¶¶ 31-32.) (*See also id.*, ¶¶ 42-43.)

**2. Exhaustion of available administrative remedies**

Plaintiff alleges Defendant Trowbridge "violated Plaintiff's First Amendment right when she wrote a false ticket against Plaintiff in response or retaliation [for] Plaintiff having brought a grievance against [her] for having used racist and demeaning words towards him." (ECF No. 1, ¶ 41.)[1] Defendant Trowbridge argues that Vesey "failed to properly exhaust administrative remedies on any of his claims against [her]." (ECF No. 17, PageID.61; *see also id*., PageID.65.)

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively

[1] This is not perfectly consistent with Plaintiff's earlier allegation that "Defendant Trowbridge *immediately* wrote a false ticket against [him]" after Plaintiff gathered his things and left the library (consistent with Defendant's direction to leave), which occurred right after he told Defendant he "*would be forced* to file a grievance[,]" because it is clear that he had not yet, in fact, actually "brought" a grievance. (ECF No. 1, ¶¶ 23-26) (emphases added). (*See also* ECF No. 17-3, PageID.97 ("*Before* Grievant could fill out and submit the grievance[,] Ms. Trowbridge retaliated against him by writing a false ticket." (emphasis added)). But it is consistent with the notion that the grievance process begins when the grievant "attempt[s] to resolve a grievable issue with staff . . . ." (ECF No. 17-2, PageID.82 (MDOC PD 03.02.130, effective March 18, 2019, ¶ W).)

without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91 (footnote omitted).

**3. The grievance procedure**

The MDOC's 3-step prisoner/parolee grievance procedure is set forth in MDOC PD 03.02.130 (effective Mar. 18, 2019). (ECF No. 17-2.) Importantly, this policy directive provides: "[c]omplaints filed by prisoners regarding grievable issues as defined in this policy serve to exhaust a prisoner's administrative remedies only when filed as a grievance through all three steps of the grievance process in compliance with this policy." (*Id.*, ¶ C.) Also important to the cause before this Court is the provision that "[a] grievance shall be rejected by the Grievance Coordinator if . . .

> The prisoner is grieving a decision made in a Class II or Class III misconduct hearing … and issues directly related to the hearing process (e.g., sufficiency of witness statements, timeliness of misconduct review, timeliness of hearing). Prisoners are provided an appeal process for Class II and Class III decisions pursuant to PD 03.03.105 "Prisoner Discipline."

MDOC P.D. 03.02.130, ¶ J(11).

On October 3, 2019, Plaintiff completed an MDOC prisoner/parole grievance form (ARF-10-10-2412-27A), wherein he complained that Librarian Trowbridge "retaliated against [him] for exercising the grievance process in regard[] to grievance ARF-2019-10-2308-17A[.]" (ECF No. 17-3, PageID.95, 97.) Specifically, Plaintiff complained that "Trowbridge retaliated against him by

writing a false ticket." (*Id*., PageID.97.) Grievance ARF-10-10-2412-27A was received at Step I on October 4, 2019, but it was rejected on October 9, 2019, seemingly because "[d]ecisions made in hearing conducted by a hearing officer of the State Office of Administrative Hearings and Rules . . ." are not grievable. (*Id*., PageID.96.) *See* MDOC PD 03.02.130, ¶ J(11) (ECF No. 17-2). (*See also* ECF No. 1, ¶¶ 33-35.)

Plaintiff claims that Grievance Coordinator Ream's reason for rejecting the grievance "is without merit." (ECF No. 1, ¶ 36.) Plaintiff completed a Step II grievance appeal form on October 25, 2019, explaining, *inter alia*, that "[t]his grievance deals with retaliation and does not seek relief from any decision made at an administrative hearing." (ECF No. 17-3, PageID.93.) It was received at Step II on October 28, 2019, and the grievance rejection was upheld at Step II on November 1, 2019. (*Id*., PageID.93-94.) (*See also* ECF No. 1, ¶ 37.)

Plaintiff completed a Step III appeal, contending that the "Step 2 Respondent's "decision to uphold the rejection of this grievance is clearly wrong." (ECF No. 17-3, PageID.93.) Plaintiff's Step III appeal was received on November 27, 2019, and the rejection was upheld on December 10, 2019. (*Id*., PageID.92-93.) (*See also* ECF No. 1, ¶ 38.)

As the foregoing paragraphs indicate, ARF-10-10-2412-27A clearly involved alleged retaliation. Although Plaintiff alleges that "he has properly presented a

grievable issue before the [MDOC] which satisfied every requirement of the grievance policy, making the claim presented before this court fully exhausted[,]" (ECF No. 1, ¶ 39), Defendant Trowbridge points out that ARF-10-10-2412-27A "did not exhaust any claims . . . because [it] was rejected as non-grievable . . . ." (ECF No. 17, PageID.73 (citing ECF No. 17-3, PageID.96).) Because ARF-10-10-2412-27A grieved "a decision made in a Class II or Class III misconduct hearing," MDOC PD 03.02.130, ¶ J(11), the MDOC's rejection of the Step I grievance on that basis was warranted.

### 4. Class II misconduct hearing and appeal

Defendant Trowbridge contends "the proper way to exhaust claims of a retaliatory misconduct ticket is through the misconduct ticket hearings and appeals process." (ECF No. 17, PageID.73.) "A prisoner aggrieved by a final decision or order of a hearings officer shall file a motion or application for rehearing in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1). *See also Ayotte v. Stemen*, No. 15-13826, 2019 WL 2219739 (E.D. Mich. Feb. 27, 2019) (Davis, M.J.) (regarding bench trial on exhaustion of administrative remedies), *report and recommendation adopted*, No. 15-13826, 2019 WL 1349607 (E.D. Mich. Mar. 26, 2019) (Tarnow, J.) (ECF No. 20-4).

The MDOC's Prisoner Discipline Policy Directive contains provisions concerning Class II misconduct hearings and Class II misconduct appeals. MDOC PD 03.03.105, ¶¶ OO-XX, UUU-XXX (effective July 1, 2018). (ECF No. 17-5). As the Sixth Circuit has noted, "Michigan's rules provide that the only avenue for challenging such reports is a hearing[.]" *Siggers v. Campbell*, 652 F.3d 681, 694 (6th Cir. 2011). This is so because "'[d]ecisions made in hearings conducted by hearing officers of the Hearings and Appeals Division of the Office of Policy and Hearings (OPH)' are non-grievable and 'shall be rejected by the Grievance Coordinator.'" *Siggers*, 652 F.3d at 694 (citing MDOC PD 03.02.130, ¶ F.1 (effective Dec. 19, 2003)). *See also* MDOC PD 03.02.130, ¶ J(11) (effective Mar. 18, 2019).

**a. Misconduct hearing and appeal documents**

Defendant Trowbridge argues that Plaintiff "did not allege retaliation" either during the October 2, 2019 misconduct hearing or in the October 15, 2019 appeal. (ECF No. 17, PageID.73-74.) In response, Plaintiff contends he "raise[d] the retaliation issue at the administrative hearing, and on appeal." (ECF No. 20, PageID.132 ¶ 3; *see also id*., PageID.141, 144-147 [Mtn. Br.].)

Plaintiff's misconduct hearing took place on October 2, 2019. (ECF No. 17-4, PageID.102.) Plaintiff filed a misconduct appeal (Form CSJ-274), which was received on October 15, 2019. (ECF No. 17-4, PageID.99.) *See also* MDOC PD

03.03.105, ¶ UUU (effective July 1, 2018) (ECF No. 17-5) ("The appeal must be filed within 15 days after receipt of the hearing officer's written decision."). Among other things, Plaintiff complained that his due process rights were violated where the hearing officer "refused to accept, read, and make part of the record [his] written statement/defense[,]" and "mischaracterized the evidence . . . ." (ECF No. 17-4, PageID.99.) Per Plaintiff's declaration, that written statement alleged retaliation, as detailed below. (ECF No. 20, PageID.133, ¶¶ 7, 10-11.) On or about October 24, 2019, a deputy determined that the violation fit the charge and no due process violations had occurred. (ECF No. 17-4, PageID.99-100.)[2]

**b. Declarations**

In Plaintiff's declaration, he describes his attempt to submit a typed statement of defense at the October 2, 2019 misconduct hearing, the first paragraph of which states that "the ticket w[ritten] against [him] was all lies and wr[itten] out of retaliation for [him] having exercised the grievance process." (ECF No. 20, PageID.133 ¶¶ 5-7.) Plaintiff declares that he "attempted to hand the statement to the hearing officer[,] Lt. Dahms, but he refused to take it." (*Id.*, ¶ 8.) Plaintiff further declares:

- I then beg[a]n to read the statement to Lt. Dahms.

[2] It is not clear from the record whether Plaintiff filed "an application for direct review in the [state] circuit court . . . [,]" Mich. Comp. Laws § 791.255(2), although Defendant Trowbridge does not rely upon this in her argument.

- Lt. Dahms interrupted me after I had read the first paragraph and *told me that the hearing was not the right place to raise a retaliation issue*, and that the only thing he would be concerned with at the hearing was whether or not I disobeyed the direct order.

- I responded by asking Lt. Dahms, if this was not the right place to raise a retaliation issue, then what was?

- Lt. Dahms *told me to write a grievance*.

- The rest of the hearing was combative, as Lt Dahms denied my request to review the camera footage, and interview my co-worker who witnessed the events in question. Further Lt. Dahms continuously interrupted me in a rude manner.

(*Id.*, ¶¶ 9-13 (emphases added).) Plaintiff avers that, after the hearing was over, he "immediately wrote and submitted a grievance alleging retaliation, just as Lt. Dahms had instructed [him] to do," which is clearly a reference to ARF-10-10-2412-27A. (ECF No. 20, PageID.133 ¶ 14; ECF No. 17-3, PageID.92-97.)

Additionally, Plaintiff declares that, when he received the guilty finding in the mail, he filed an appeal and "submitted a revised copy of the statement [he] attempted to present at the administrative hearing." (ECF No. 20, PageID.134, ¶ 16.) According to Plaintiff, the revised copy "was prepared and typed by Richard Lloyd." (*Id.*, ¶ 17.) Plaintiff explains that "[i]n the revised statement[,] I had the first paragraph, which mentioned retaliation, omitted, for the reason that Lt. Dahms had effectively told me that I could not raise retaliation as a defense in this process,

and I wanted to abide by the rules." (*Id.*, ¶ 18.) Importantly, Lloyd (#214426) declares:

> 1. . . . Prior to the misconduct hearing on 10/2/2019, Prisoner Dennis Vesey #298066 had prepared a handwritten statement for the Hearing Officer;
>
> 2. Prisoner Vesey asked me, "would I type the statement on my typewriter" and I told him 'yes.' The statement that I typed out for Prisoner Vesey, had a claim within the statement that, "he was being retaliated against by his Supervisor, Ms. Trowbridge, who had written him a misconduct ticket because he had utilized the grievance process;"
>
> 3. On the date of the Misconduct Hearing, Prisoner Vesey returned from the hearing and asked me to, "re-type the statement and to 'exclude' the first paragraph because he was told that, 'he couldn't raise the claim of retaliation, as a defense to disobeying a direct order'." I later retyped the statement and I did not include the part of the statement that initially alleged that, "Prisoner Vesey was being retaliated against by his supervisor;"
>
> 4. About a week later, Prisoner Vesey asked me to type out an appeal argument that he had prepared, in order to appeal the decision made at the administrative hearing. I did in fact type this appeal argument onto an appeal form;
>
> 5. The following day, when I gave the appeal form to Prisoner Vesey, I watched him attach to it the "re-typed statement" that I had typed for him a week ago.

(ECF No. 20, PageID.137-138 [Lloyd Affid.] ¶¶ 1-5.) The revised or retyped statement to which Vesey and Lloyd refer seems to be the 5-paragraph "written statement/defense for DDO misconduct," which, although it does not mention

retaliation, does claim Trowbridge "lied in the body of the ticket . . . ." (ECF No. 17-4, PageID.103; *see also* ECF No. 20, PageID.134, ¶ 19.)

Plaintiff's and Lloyd's declarations create a genuine issue of material fact as to whether Plaintiff alleged retaliation at his misconduct hearing. As Plaintiff puts it:

> Contrary to defendant's motion, I did in fact raise the retaliation issue at the misconduct hearing, and although I was tricked by Lt. Dahms into not using the word retaliation in my appeal, I did in fact state the nature of the retaliation in the appeal, which was that defendant lied on me in the misconduct report.

(ECF No. 20, PageID.134 ¶ 20.) If Defendant Trowbridge contested Plaintiff's claim that he attempted to raise the issue of retaliation in his October 2, 2019 misconduct hearing, but was prevented from doing so, Defendant Trowbridge could have registered her position by filing a reply. She did not.

### D. Conclusion

The declarations filed in support of Plaintiff's motion response, in addition to his verified complaint, paint a picture which – for purposes of this motion – must be seen as true. It is not a pretty picture. It displays a scenario in which prison officials put Plaintiff between the proverbial "rock and a hard place," or, as the Supreme Court recently described a similar scenario for prisoners trying to pursue their grievances, in "blind alleys and quagmires." *Ross v. Blake*, 578 U.S. 632, 644 (2016). When Plaintiff attempted to raise retaliation through a written statement as

part of his defense at the misconduct hearing, he was allegedly told, falsely, that he could not do so as part of the misconduct ticket hearing; instead, he should "write a grievance." (ECF No. 1, ¶ 30; ECF No. 20, PageID.133 ¶¶ 10-12.) If that is true, Defendant cannot complain now that Plaintiff did not specifically raise this issue when he filed his appeal from the misconduct hearing, because Plaintiff was only conforming to the prison official's / the hearing officer's – alleged directive. Then, when Plaintiff attempted to grieve the issue, it was rejected at Step 1, this time *correctly* explaining that it was non-grievable (ECF No. 17-3, PageID.96), *i.e.*, it had to be pursued in his misconduct proceeding. *Siggers*, 652 F.3d at 694. "Corrections officials concerned about maintaining order in their institutions have a reason for creating and retaining grievance systems that provide – and that are perceived by prisoners as providing – a meaningful opportunity for prisoners to raise meritorious grievances." *Woodford,* 548 U.S. at 102. Plaintiff here has described a scenario in which the procedural requirements, as seemingly created and contradicted *ad hoc* by the prison officials, would appear to have the effect, at least in this instance, "of tripping up all but the most skillful prisoners[.]" *Id*. Where prison officials have "misled . . . individual inmates so as to prevent their use of otherwise proper procedures[,]" the "courts have recognized [that] such interference with an inmate's pursuit of relief renders the administrative process unavailable." *Ross,* 578 U.S. at 644 (external footnote omitted). Accordingly, the

Court should **DENY** Defendant Trowbridge's February 16, 2022 motion for summary judgment (ECF No. 17), because Defendant has failed to demonstrate that the undisputed material facts in this case entitle her to judgment as a matter of law.

## III. PROCEDURE ON OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: July 5, 2022

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE