UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENNIS VESEY #298066,

    Plaintiff,

v.

BETH TROWBRIDGE,

    Defendant.

_____ /

Case No. 21-10116

F. Kay Behm
United States District Judge

**OPINION AND ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT (ECF No. 34)**

**I.  PROCEDURAL HISTORY**

Plaintiff, Dennis Vesey, filed this prisoner civil rights complaint against Defendant, Beth Trowbridge, alleging First Amendment retaliation.  (ECF No. 1).  Trowbridge filed a motion for summary judgment on February 8, 2023.  (ECF No. 34).  This motion is fully briefed.  (ECF Nos. 36, 37).  This case was previously assigned to District Judge Robert H. Cleland and was reassigned to the undersigned on September 26, 2023.

For the reasons set forth below, the court **GRANTS** Trowbridge's motion for summary judgment.

## II. FACTUAL BACKGROUND

Vesey alleges in the complaint that on September 28, 2019, while incarcerated and serving as a law library clerk at the Gus Harrison Correctional Facility (ARF), he had a disagreement with his supervisor, Beth Trowbridge, over his job responsibilities in the presence of another law library clerk. (ECF No. 1, ¶¶ 5-14). During this discussion, Trowbridge, who is a white female, called Plaintiff "incompetent" and stated, "'[Y]ou people just don't get it.'" *Id*. at ¶ 15. Vesey, who is a Black male, responded by asking, "'[B]y you people, do you mean black people'?" *Id*. at ¶ 16. Trowbridge replied, "'[Y]ou said it[;] I didn't.'" *Id*. at ¶ 17. Vesey then left Trowbridge's office but was called back. *Id*. at ¶¶ 18-19. Upon entering her office, "he attempted to resolve what he perceived to be a grievable issue by informing Trowbridge that he no longer felt comfortable working for her after she had made what he perceived to be a racial and/or demeaning comment towards him." *Id*. at ¶ 20. He asked to be reclassified to another job assignment, but she refused. *Id.* at ¶¶ 21-22. "Plaintiff then informed Ms. Trowbridge that if they could not resolve the issue that he would be forced to file a grievance." *Id*. at ¶ 23. She yelled at Vesey and told him to leave the library immediately. *Id*. at ¶ 24. Vesey gathered his belongings and complied. *Id*. at ¶ 25.

According to Vesey, after he left the library, "Defendant Trowbridge immediately wrote a false ticket against Plaintiff, accusing" him of refusing to perform job duties and refusing to return to her office after having walked out, despite having been ordered to do both. *Id*. at ¶ 26.  At 3:30 p.m. that afternoon, Trowbridge issued Vesey a Class II misconduct report for "Disobeying a Direct Order[.]" (ECF No. 17-4, PageID.101).  Vesey accuses Trowbridge of fabricating the accusations in the ticket in retaliation for having exercised his First Amendment right to redress in the form of a grievance.  (ECF No. 1, ¶ 27.)

III.   **ANALYSIS**

   A.   <u>Standard of Review</u>

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record …; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that

3

one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and to do so must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (E.D. Mich. 2004). To fulfill this burden, the non-moving party only needs to demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

    B.    <u>First Amendment Retaliation</u>

The Supreme Court has recognized that prison inmates retain those First Amendment rights not incompatible with their status as prisoners. *Pell v. Procunier*, 417 U.S. 817, 832 (1974); *see also Jones v. Caruso*, 569 F.3d 258, 267 (6th Cir. 2009). Retaliation based on a prisoner's exercise of constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). To establish a First Amendment retaliation claim, the plaintiff must prove that: (1) the plaintiff engaged in activities protected by the Constitution or statute; (2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was taken at least in part because of the exercise of the protected conduct. *Id*.

Trowbridge first argues that Vesey cannot show that he engaged in protected conduct because the grievance he filed against her was frivolous. Trowbridge acknowledges that Vesey has a First Amendment right to file grievances against prison officials but contends that "[t]his right is protected … only if the grievances are not frivolous. In other words, an inmate's pursuit of grievances against prison officials can constitute protected conduct for purposes of a retaliation claim, but only to the extent that the underlying claims have merit." *Clark v. Johnston*, 413 F. App'x 804, 812 (6th Cir. 2011); *see also Lewis v. Casey*, 518 U.S. 343, 353 (1996) ("Depriving someone of a frivolous claim … deprives him of nothing at all…"). The Sixth Circuit has held that inmates have no

5

constitutionally protected right to be free from verbal abuse and, therefore, grievances arising from such verbal abuse are frivolous. *Scott v. Kilchermann*, 230 F.3d 1359 (6th Cir. 2000) (unpublished) (citing *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987) (Verbal abuse does not qualify as punishment under the Eighth Amendment)). In *Scott*, the plaintiff contended that the defendant, a prison guard, verbally abused him. *Id*. at *1. In response, the plaintiff threatened to file a grievance and claimed that the defendant retaliated against him for threatening a grievance by issuing a false misconduct ticket against him. *Id*. The Sixth Circuit found it unnecessary to examine the District Court's findings on whether there was a causal connection between the plaintiff's threatened grievance and the misconduct ticket because the grievance was for verbal abuse and was, therefore, frivolous. *Id*. at *2 (citing *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (An inmate has an undisputed First Amendment right to file grievances against prison officials so long as those grievances are not frivolous.). Trowbridge argues that this case, where Vesey complains that she was verbally abusive and used racist language, is indistinguishable from *Scott* and thus, Vesey did not engage in protected conduct when he filed the grievance.

Vesey, on the other hand, argues that his grievance was not just about verbal abuse, but also Trowbridge's "implicit threat to fire plaintiff by fabricating a misconduct ticket." (ECF No. 36, PageID.278). He claims that when he used the

6

phrase "demeaning language" to describe his grievable issues, he was "referring to the sequence of events that involved Trowbridge threatening to fire [him] by writing a false misconduct ticket." (ECF No. 36, Vesey Declaration, PageID.322). Vesey cites *Brown v. Schultz*, No. 1:19-CV-634, 2021 WL 355742, at *2 (W.D. Mich. Jan. 5, 2021), report and recommendation adopted, No. 1:19-CV-634, 2021 WL 354513 (W.D. Mich. Feb. 2, 2021) in support of his claim.  In *Brown*, the plaintiff's grievance stated as follows:

> On Monday 3-12-18 at or around 2:00 pm, Trinity worker Schultz was watching me pan chicken for dinner and she said that she really liked me but I won't like her because she was pregnant and had a boyfriend. I told her to leave me alone, or I was going to her boss. She then told me that I better watch my ass or she was going to fire me. I said for what then she said I will make up something, like stealing. I told her that she was crazy. She then said you black guys make things up on us Trinity workers everyday.

*Brown v. Schultz*, at *2.  The court explained that the plaintiff's grievance arguably can be construed to allege two acts: (1) sexual harassment; and (2) threatening to fabricate a basis to terminate the plaintiff's job.  *Id*.  The court found that the grievance was not frivolous because the sexual harassment was not merely verbal abuse, but even if it were, the grievance also complained about the defendant's *threat to fabricate* a ground on which to have the plaintiff fired.  *Id*.  Such a grievance cannot be considered "*de minimis*."  *Id*. (citing *Maben v. Thelen*, 887

F.3d 252, 264 (6th Cir. 2018)).  Critically, the court looked at the content of the grievance itself in order to evaluate whether it was frivolous or identified only a *de minimis* harm such that it could not support a First Amendment retaliation claim.

In his grievance, Vesey states that he is grieving Trowbridge's violation of MDOC Policy "… by discriminating against, and using language to degrade, and humiliate [Vesey]." (ECF No. 36, PageID.292).  The grievance reads further:

> ATTEMPT TO RESOLVE ISSUE
> After the incident happened, grievant left Ms. Trowbridge office only to have her call him back into her office just seconds later.  Upon entering her office grievant informed Ms. Trowbridge that he felt uncomfortable working for her after she had made such racist comments.  Grievant then asked Ms. Trowbridge if she would reclass him.  Ms. Trowbridge replied that she would not.  Grievant then told Ms. Trowbridge that if they couldn't resolve the issue in that [sic] manner that he would be forced to write a grievance.  Ms. Trowbridge then asked grievant to leave the library.
>
> ISSUE
> On 9-28-19 Grievant was on assignment as a law clerk in the North Library.  During this time his supervisor, Ms. Trowbridge called him into her office and questioned him about hypothetical job duties that she may ask him to do in the future.  Ms. Trowbridge explained that if Grievant wasn't willing to do the jobs in the future that she would fire him now.  Grievant asked Ms. Trowbridge if she meant reclass, because fire implied that Grievant had done something wrong.  Ms. Trowbridge replied by called Grievant incompetent, and stating "you people

8

> just don't get it." Grievant asked Ms. Trowbridge, "by you people, do you mean black people?" She replied, "You said it not me."

(ECF No. 36, PageID.292). Vesey's declaration does not bear on the issue before the court – whether the *grievance* was frivolous or only identified a *de minimis* injury. While Vesey now says that he meant something else by the phrase "demeaning language," his post-hoc explanation does not change the content of the grievance, which is the protected conduct underpinning his First Amendment retaliation claim. That is, Vesey cannot broaden the scope of "protected conduct" based on claims not contained in the grievance because the grievance is the only protected conduct at issue here. Further, unlike in *Brown*, nothing in the grievance suggests a threat to *fabricate* a reason to terminate Vesey. The grievance explains that Trowbridge said she would fire Vesey if he indicated an unwillingness to perform job duties in the future. This version of events is well-supported in the record, which shows that Vesey did not believe he was required to learn book "facing" and that Trowbridge told him that she would fire him if he indicated that he would not perform such duties in the future, when directed to do so. (ECF No. 36, PageID.300, Trowbridge email; ECF No. 36, PageID.320-21, Vesey Declaration). Here, the grievance does not allege any threat to *fabricate* a basis for termination, unlike the grievance in *Brown*. The court concludes that Vesey's grievance was, therefore, frivolous in that it merely complained of verbal

9

abuse. *See Scott*, 230 F.3d 1359, at *2; *Maben*, 887 F.3d at 264; *Herron*, 203 F.3d at 415. Because a frivolous grievance is not protected conduct, Vesey's First Amendment retaliation claim must fail.

Given the foregoing conclusion, the court need not address Trowbridge's other arguments supporting its motion for summary judgment.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** Defendant's motion for summary judgment.

**SO ORDERED**.

Date: September 30, 2023  s/F. Kay Behm
F. Kay Behm
United States District Judge